Adam A. Apton (SBN 316506)
**LEVI & KORSINSKY LLP**
515 South Flowers Street
18th & 19th Floors
Los Angeles, CA 90071
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Counsel for Plaintiff*

*[Additional Counsel listed in signature block]*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK GLINOGA, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SULLIVAN ENTERTAINMENT INC., SULLIVAN HOME ENTERTAINMENT LIMITED, SULLIVAN ENTERTAINMENT INTERNATIONAL INC., and SULLIVAN ENTERTAINMENT GROUP INC.,<br><br>Defendants. | Case No.: 25CV0707-GPC-SBC<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>DATE: October 17, 2025<br><br>TIME: 1:30 p.m.<br><br>JUDGE: Hon. Gonzalo P. Curiel<br><br>CTRM: 12A (12th Floor) |

# TABLE OF CONTENTS

INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 2

LEGAL STANDARDS ..... 3

ARGUMENT ..... 3

I. PRIVACY INJURIES ARE SUFFICIENTLY CONCRETE TO CONFER ARTICLE III STANDING. ..... 3

II. PLAINTIFF'S ALLEGATIONS SATISFY RULE 8'S PLEADING STANDARD. ..... 6

III. PLAINTIFF STATES A CLAIM UNDER THE WIRETAP STATUTES ..... 7

A. Plaintiff Has Alleged An Interception ..... 7

B. Plaintiff Did Not Consent to the Interception of His Sensitive Information. ..... 9

C. Defendants Did Not Seek, Let Alone Provide, Consent to Meta's Interceptions. ..... 11

D. The Crime-Tort Exception Applies, Precluding Defendants from Claiming Any Purported Defense Under the Party Exception. ..... 13

IV. PLAINTIFF STATES A CLAIM FOR INTRUSION UPON SECLUSION. ..... 15

V. PLAINTIFF STATES A TRAP AND TRACE CLAIM. ..... 18

A. The Tracking Tools Capture Addressing Information that Identifies the Source of the Electronic Communication Through the User's Facebook ID. ..... 19

B. The Tracking Tools are Trap and Trace Devices Because They Identify the Source of the Information Transmitted, Regardless of Other Data Transmitted. ..... 21

C. The Tracking Tools on Defendant's Website are Considered Trap and Trace Devices. ..... 21

VI. PLAINTIFF STATES A CLAIM UNDER THE VPPA. ..... 23

CONCLUSION ..... 25

# TABLE OF AUTHORITIES


**Page(s)**

***Cases***

*Ade v. Viki, Inc.*,
2024 No. 23-CV-02161-RFL, 2024 U.S. Dist. LEXIS 79467 (2024)....... 25

*Archer v. NBCUniversal Media, LLC*,
2025 No. 2:24-CV-10744-AB-JC, 2025 U.S. Dist. LEXIS 129598 (2025) ........ 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........6

*Berry v. Funk*,
146 F.3d 1003 (D.C. Cir. 1998) ........ 10

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 6, 7

*Brooke v. Woodside Hotel Grp., Ltd.*,
2020 U.S. Dist. LEXIS 215038 (N.D. Cal. Nov. 17, 2020)........ 4, 5

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 10

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........6

*Calhoun v. Google, LLC*,
113 F.4th 1141, 1147 (9th Cir. 2024) ........9

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 10

*Castillo v. Costco Wholesale Corporation*,
No. 2:23-cv-01548, 2024 U.S. Dist. LEXIS 207197 (W.D. Wash. Nov. 14, 2024)........ 14

*Clement 1 LLC v. Scottsdale Ins. Co., CV 23-3779 PA (JCx)*,
2023 U.S. Dist. LEXIS 119914 (C.D. Cal. July 11, 2023)........................ 18

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)...................................................... 14

*D'Angelo v. Penny OpCo, LLC*,
No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal. Oct. 24, 2023)........................................................................................ 10

*Deivaprakash v. Condé Nast Digit.*,
2025 No. 25-cv-04021-RFL, 2025 U.S. Dist. LEXIS 172906 (2025) ...................................................................................................... 18, 23

*Doe v. Call-On DOC, Inc.*,
2025 No. 24cv2095-GPC, 2025 U.S. Dist. LEXIS 113269 (2025)........... 16

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .................................................... 10

*Doe v. Redeemer Health*,
No. 230501236, 2023 Phila. Ct. Com. Pl. LEXIS 17 (2024)............... 16, 17

*Eichenberger v. ESPN, Inc.*,
*876 F.3d 979, 985 (9th Cir. 2017)* ........................................................... 24

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024)....................................................... 10

*Friedman v. Zimmer, (Ex)*,
2015 U.S. Dist. LEXIS 143941 (C.D. Cal. July 10, 2015)...........................7

*Gabrielli v. Haleon US Inc.*,
2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025)........... 18, 18, 23

*Garcia v. Bandai Namco Ent. Am. Inc.*,
2025 No. 8:25-CV-00967-DOC-PVC, 2025 U.S. Dist. LEXIS 152616 (2025) ............................................................................................... 24, 25

*Garon v. Keleops USA, Inc.*,
2025 No. 25-cv-02124-DMR, 2025 U.S. Dist. LEXIS 170745 (2025)18, 23

*Gonzalez v. Santa Clara Cnty.*,
2025 No. 24-cv-00296-PCP, 2025 U.S. Dist. LEXIS 158393 (2025)....... 18

*Gray v. Luxottica of Am., Inc.*,
No. 8:24-CV-00160-MRA-DFM, 2024 U.S. Dist. LEXIS 243633 (C.D. Cal. Dec. 16, 2024)........................................................................ 8, 9

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)................................................... 21

*Haines v. Cengage Learning, Inc.*,
No. 1:24-cv-710, 2025 U.S. Dist. LEXIS 139847 (S.D. Ohio July 22, 2025)........................................................................................... 25

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ..................................................... 12

*Hughes v. Nat'l Football League*,
No. 24-2656, 2025 U.S. App. LEXIS 15216 (2025) ................................ 24

*In re Facebook Tracking*,
956 F.3d 598, 598–99 (9th Cir. 2020)............................................... 6, 8, 17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125, 142-43 (3d Cir. 2015) ..........................................................8

*In re Google Inc. Gmail Litig.*,
No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26, 2013)..................................................................................................9

*In re Meta Pixel Tax Filing Cases*,
2025 No. 22-cv-07557-PCP, 2025 U.S. Dist. LEXIS 152615 (2025) .............................................................................. 18, 21, 22, 23

*In re Pharmatrak Inc.*,
329 F.3d 9 (1st Cir. 2003) .................................................................. 12, 12

*In re Vizio*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................... 15

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022).... 10

*Kane v. Univ. of Rochester,*
No. 23-cv-6027-FPG, 2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024)........................................................................................ 14, 14

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 Cal. Super. LEXIS 66498 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024) ................................................................... 22

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) ................................................ 9, 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................. 3, 5

*Lynch v. Express Scripts Holding Company,*
No. 23-CV-01170-AMO, 2025 U.S. Dist. LEXIS 150756 (N.D. Cal. Aug. 5, 2025)............................................................................................. 13

*M. H. v. Done Glob. Inc.*,
2025 No. 24-cv-03040-RFL, 2025 U.S. Dist. LEXIS 38456 (2025)......... 16

*Martin v. Sephora USA, Inc.,*
No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)..................................................................................................9

*Matera v. Google Inc.,*
No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778 (N.D. Cal. Sept. 23, 2016)........................................................................................... 10

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)...............................................................5

*McGary v. City of Portland*,
386 F.3d 1259 (9th Cir. 2004)...............................................................3

*Med. Lab. Mgmt. Consultants v. ABC, Inc.*,
306 F.3d 806 (9th Cir. 2002)............................................................... 16

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ........................................................ 11

*Mir v. City of Torrance, (PJW)*,
2018 WL 6133712 (C.D. Cal. Oct. 17, 2018)..............................................6

*Omidi v. Wal-Mart Stores, Inc.*,
No. 14cv00857 JAH-BL, 2020 U.S. Dist. LEXIS 49836 (S.D. Cal. Mar. 23, 2020)..........................................................................................................7

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ..................................................... 17

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023)........................................................9

*Plotsker v. Envato Pty Ltd.*,
No. 2:24-CV-04412-MEMF, 2025 U.S. Dist. LEXIS 168070 (2025) ...... 24

*Powell v. Union Pac. R.R. Co.*,
864 F. Supp. 2d 949 (E.D. Cal. 2012)..........................................................9

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ............................................... 14, 14

*R.S. v. Prime Healthcare Servs.*,
No. 5:25-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338 (C.D. Cal. Jan. 13, 2025) ........................................................................................ 15

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. 2019)...8

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019)............................................................. 10

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ...................................................... 15

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ............................................... 18, 23

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) ........................................................ 24

*Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*,
2016 No. 12-CV-2472-AJB-KSC, 2016 U.S. Dist. LEXIS 101235 (2016) ........................................................ 25

*Stein v. Edward-Elmhurst Health, -*,
14515, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025) ............... 15

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ........................................................ 13

*Thompson v. Davis,*
295 F.3d 890, 895 (9th Cir. 2002) (per curiam), cert denied, 538 U.S. 921 (2003) ........................................................ 3

*Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*,
594 F.2d 730 (9th Cir. 1979) ........................................................ 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................ 3

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........................................................ 15

*United States v. Ortiz-Lopez*,
651 F. Supp. 3d 855 (W.D. Tex. 2023) ........................................................ 9

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........................................................ 5

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ........................................................ 7

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ........................................................ 9

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ........................................................ 17

*Zarif v. Hwareh.com, Inc.*, 2025 No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (2025) .......... 19, 21

***Statutes***

18 U.S.C. § 2511(1)(a) .......... 8

18 U.S.C. § 2511(2)(c)-(d) .......... 11

18 U.S.C. § 2511(2)(d) .......... 11, 11, 13

18 U.S.C. § 2710(a) .......... 23

18 U.S.C. § 2710(b) .......... 23

18 U.S.C. § 2710(b)(2)(D) .......... 14

Cal. Penal Code § 638.51 .......... 20, 23

Cal. Penal Code § 638.51(a) .......... 18, 19, 21, 22

***Federal Rules***

Fed. R. Civ. P. 12(b)(6) .......... 3

## INTRODUCTION

The crux of Defendants' Motion to Dismiss attacks Plaintiff's wiretapping claims, arguing either that Gazebo cannot intercept communications to which it is a party, or that Plaintiff consented to the interceptions. Defendants' arguments invoking the party exception rely on outdated, non-controlling authority and do not overcome the Complaint's well-pled allegations that *Meta* was the interceptor that Defendants enabled or procured to intercept Plaintiff's Sensitive Information.[1] Defendants' consent argument likewise fails: consent is an issue not ripe for determination on a motion to dismiss. Even if it were, the Privacy Policy does not support a showing that Plaintiff consented to the interceptions because it fails to obtain Subscribers' *actual* consent to the collection, interception, and disclosure of their legally protected, identifying information.

Defendants' remaining arguments lack merit. Defendants' Article III challenge improperly relies on their own unilateral investigation and extrinsic declarations, rather than the Complaint's allegations, as Rule 12(b)(6) requires. The Rule 8 challenge fails because the Complaint provides fair notice of Plaintiff's claims. Defendants' intrusion upon seclusion arguments also fail because, contrary to Defendants' contentions, users have a reasonable expectation of privacy in their electronic communications, particularly where that information is protected under the VPPA. The fact that Plaintiff "directly and intentionally" provided that information to Defendants does not change that result. And whether this highly intrusive conduct is "sufficiently serious" is a factual question not suited for a motion to dismiss. Defendants' trap and trace arguments mischaracterize Plaintiff's allegations relating to the operation of the Tracking Tools and have been rejected by federal courts. Finally, Defendants' VPPA arguments rely on non-binding authority and ignore cases holding the opposite in the Ninth Circuit.

[1] Unless otherwise defined, capitalized terms are defined in Plaintiff's Complaint.

## STATEMENT OF FACTS

Plaintiff Mark Glinoga brings this action on behalf of himself and all others similarly situated against Defendants Sullivan Entertainment Inc. and its affiliates, which own and operate the video streaming service, GazeboTV (Compl. ¶ 28). To provide video streaming, Defendants utilized Vimeo's OTT platform, but Defendants retained control over the Website, including its privacy practices, subscription terms, and the integration of Tracking Tools. *Id.* ¶¶ 64-67, 87-92.

Defendants intentionally embedded Tracking Tools, including the Meta Pixel, into GazeboTV's webpages. *Id.* ¶¶ 16, 23, 93, 97-98. A Pixel cannot be placed on a website by accident or by a third party; it requires affirmative steps by the website operator to create, configure, and install it. *Id.* ¶¶ 103-08. Defendants undertook those steps and further programmed the Pixel to track specific user actions, such as clicking to watch or purchase videos. *Id.* ¶¶ 103-08, 125.

The Pixel intercepts communications between Subscribers and GazeboTV through Subscribers' browsers. When a Subscriber loads or interacts with video content, the Pixel transmits PII, such as a subscriber's Facebook ID, along with video titles, search terms, and other browsing data, directly to Meta. *Id.* ¶¶ 109-23, 129-31, 138-39. This information is bundled with cookies and request headers in a format easily parsed to identify individual users. *Id.* ¶¶ 118-23, 129-31. Defendants knew that this transmission of PII and viewing history would occur each time a Subscriber engaged with the Website. *Id.* ¶¶ 124, 153-54, 224.

Defendants implemented these Tracking Tools for the unlawful purpose of monetizing Subscriber data. By transmitting PII and video-watching information to Meta, Defendants enabled Meta to refine its advertising algorithms and sell targeted advertising services. *Id.* ¶¶ 132, 249. In exchange, GazeboTV benefited from improved advertising effectiveness and revenue growth tied to subscriber data exploitation. *Id.* ¶¶ 58, 98-100, 129-33, 249.

Plaintiff Glinoga's data was disclosed in this manner. After watching videos on GazeboTV, he began receiving unsolicited advertisements tied to that content. *Id.* ¶ 27. He never authorized the disclosure of his Sensitive Information, nor was he given notice or an opportunity to consent. *Id.* ¶¶ 8-10, 17, 23, 27, 150, 175-77. Defendants' conduct diminished the value of Plaintiff's data, deprived him of control over his personal information, and caused concrete harm to his privacy.

## **LEGAL STANDARDS**

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to [plaintiffs]." Fed. R. Civ. P. 12(b)(6); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam), *cert denied*, 538 U.S. 921 (2003). Dismissal is appropriate "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004).

## **ARGUMENT**

### **I. PRIVACY INJURIES ARE SUFFICIENTLY CONCRETE TO CONFER ARTICLE III STANDING.**

Article III standing requires (i) "an injury in fact . . .; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). In evaluating whether plaintiffs allege a concrete harm, courts "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts" such as "the disclosure of private information, and intrusion upon seclusion." *Id.* at 424 (internal citations omitted). Plaintiff here has met each of these requirements by alleging a concrete harm – the disclosure of private information and intrusion upon seclusion – arising from Gazebo's dissemination of Plaintiff's video watching information to third parties.

Defendants factually attack Plaintiff's standing, relying on their own investigations, and declarations derived therefrom, rather than Plaintiff's allegations. MTD at 7. Extrinsic evidence is improper on a Rule 12(b) motion unless "the jurisdictional issue is separable from the merits of the case . . . ." *Brooke v. Woodside Hotel Grp., Ltd.*, No. C 20-05821 WHA, 2020 U.S. Dist. LEXIS 215038, at *5 (N.D. Cal. Nov. 17, 2020) (quoting *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). Here, it is not. Defendants challenge Plaintiff's standing by providing the results of Defendants' own purported factual investigation – conducted in concert with Vimeo, a third party. *See* MTD at 8-9. Defendants attempt to substitute Plaintiff's allegations with their own, citing the results of their investigation, including Plaintiff's lack of video watching and searches on the Website, the amount of time Plaintiff spent on the Website, and the number of webpages visited by Plaintiff. *See id.* The purported information Defendants provide not only attacks Plaintiff's injury but would also be dispositive of the merits of his claims. Defendants do not argue, nor could they, that their challenge to Plaintiff's injury is separable from the merits of the case.

Defendants bolster their position by submitting declarations reciting the supposed findings of their investigations conducted with Vimeo. *See* Declaration of AJ Pryor (the "Vimeo Decl.") and Declaration of Kevin Sullivan (the "Sullivan Decl.," collectively with the Vimeo Decl., the "Declarations"). The Declarations themselves do not explain their investigatory process – particularly, how Vimeo obtained Plaintiff's information, what methods were employed, and whether the underlying sources were reliable. If anything, the Declarations show that Defendants' streaming service provides third-party Vimeo with access to granular user engagement metrics, purportedly enabling Vimeo to search its own data for Defendants' users' video watching history by identifiable information including email address and unique ID number. Regardless, this information is outside the

pleadings, outside the bounds of Rules 12(b)(1) and 12(b)(6), was obtained independently of discovery, and its accuracy or completeness cannot be verified.

By relying on these third-party records to challenge well-pleaded allegations, Defendants have converted their Rule 12(b)(6) motion into a Rule 56 motion for summary judgment pursuant to Rule 12(d). *Brooke*, 2020 U.S. Dist. LEXIS 215038, at *5 (finding that defendant's offer of a "declaration purporting to establish" facts that dispose of the claims "is not subject to judicial notice or to the incorporation-by-reference doctrine" and "triggers conversion of defendant's Rule 12(b)(6) motion to one for summary judgment"). Converting a 12(b)(6) motion to a Rule 56 motion necessitates discovery "to illuminate" the topics at issue, including allowing Plaintiff an "opportunity to take a deposition of the declarant[s] and other depositions reasonably necessary to meet the motion for summary judgment." *Id.* at *6; *see United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (concluding that "it would have been improper for the court to consider the declaration and exhibits attached to the government's opposition without converting the motion to dismiss into a motion for summary judgment and giving [non-moving party] an opportunity to respond"). Here, that would include depositions of both AJ Pryor and Kevin Sullivan, at a minimum.

At bottom, Plaintiff alleges that he subscribed to the Website, watched videos on the Website, and had his Sensitive Information disclosed as a result of Defendants' decision to place the Tracking Tools on the Website. This is enough to find injury for Rule 12(b)(1). *Lujan*, 504 U.S. at 560–61 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume[e] that general allegations embrace those specific facts that are necessary to support the claim."); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). The Court should therefore disregard Defendants' Declarations and deny Defendants' motion to dismiss the

Complaint on subject matter jurisdiction grounds, or otherwise convert the Rule 12(b)(1) and 12(b)(6) motions into a Rule 56 motion and allow discovery to begin.

## II. PLAINTIFF'S ALLEGATIONS SATISFY RULE 8'S PLEADING STANDARD.

Defendants claim the Complaint violates Rule 8 for lack of specifics. MTD at 10. *First*, Rule 8 demands only a "short and plain statement" that provides "fair notice of what the claim is and the grounds upon which it rests." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Defendants' contention that Plaintiff did not allege when the misconduct occurred mischaracterizes the Complaint. Plaintiff pleads that the unlawful interception and disclosure of Sensitive Information occurred during each visit to the Website while the Tracking Tools were installed. *See* Compl. ¶¶ 16, 109, 114, 125, 136, 143, 147. The Complaint further alleges that the Tracking Tools were intentionally embedded by Defendants to operate continuously to capture Subscribers' Sensitive Information in real time. *See id.* ¶¶ 16, 108-09, 201. This is sufficient under Rule 8.

Defendants' reliance on *Mir v. City of Torrance*, No. CV 14-1191-RGK (PJW), 2018 WL 6133712 (C.D. Cal. Oct. 17, 2018), and *Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 135 (N.D. Cal. 2020) is misplaced. Issues relating to timing in *Mir* – a case against a local police department – cannot be compared to Plaintiff's case against a website's operators. Courts have found allegations substantially similar to Plaintiff's to suffice in the data privacy context. *See In re Facebook Tracking*, 956 F.3d 598, 598–99 (9th Cir. 2020) (holding plaintiffs adequately alleged harm to their privacy interests where Facebook "constantly" compiled their personally identifiable browsing history); *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 625 (N.D. Cal. 2021) (rejecting Google's argument that plaintiffs must allege when the challenged conduct occurred because "separate, recurring invasions of the same right each trigger their own separate statute of limitations"). Further, in

*Brodsky*, the unlawful conduct depended upon when plaintiffs had two-factor authentication enabled. 445 F.Supp.3d at 135. Here, Defendants' misconduct is tied to the functionality of the Tracking Tools themselves, as set by Defendants. The Complaint sufficiently alleges both the when and the how of the unlawful conduct, properly putting Defendants on notice of Plaintiff's claims.

*Second*, Gazebo's contention that the Complaint violates Rule 8 by impermissibly "lump[ing] all defendants together" misstates the nature of Plaintiff's allegations. "A plaintiff may use collective allegations to describe the actions of multiple defendants where defendants 'are alleged to have engaged in precisely the same conduct.'" *Omidi v. Wal-Mart Stores, Inc.*, No. 14cv00857 JAH-BL, 2020 U.S. Dist. LEXIS 49836, at *18 (S.D. Cal. Mar. 23, 2020) (citing *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016)). "Though some courts have found that lumping defendants together can render a claim infirm, even under Rule 8's liberal pleading standard, they have done so only in situations where the pleadings are largely incomprehensible." *Friedman v. Zimmer*, No. CV 15-502 GHK (Ex), 2015 U.S. Dist. LEXIS 143941, at *6 (C.D. Cal. July 10, 2015).

Here, Plaintiff alleges that all Defendants own and manage the Website, worked with Vimeo to deliver video content to Subscribers, and chose to employ Tracking Tools to profit off of the collection and disclosure of Subscribers' Sensitive Information. *See, e.g.,* Compl. ¶¶ 6, 28, 65-66, 93. Plaintiff's Complaint identifies the relevant Sullivan Entertainment entities, alleges that together they are in the business of writing, producing, and directing films and TV series, and details the shared objective of harvesting and monetizing subscribers' Sensitive Information. *Id.* ¶¶ 28, 93, 98, 131, 174. Rule 8 requires nothing more of Plaintiff.

## III. PLAINTIFF STATES A CLAIM UNDER THE WIRETAP STATUTES.

### A. Plaintiff Has Alleged An Interception

The Federal Wiretap Act is violated when any person (1) "intentionally

intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept" (2) any wire, oral, or electronic communication. 18 U.S.C. §§ 2511(1)(a). Similarly, CIPA § 631(a) is violated when any person (1) "intentionally taps" a "wire, line, cable, or instrument[,]" (2) "willfully . . . attempts to read, or to learn the contents or meaning of any . . . communication[,]" (3) "uses, or attempts to use . . . any information so obtained[,]" or (4) "aids, agrees with, employs, or conspires" to do any of the above.

Defendants' assertion that it cannot "intercept" communications to which it is a party under either both the Federal Wiretap Act and CIPA 631(2) is directly contradicted by Ninth Circuit authority, post-*In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43 (3d Cir. 2015). *See Facebook, Tracking*, 956 F.3d at 608 ("simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception"); *Gray v. Luxottica of Am., Inc.*, No. 8:24-CV-00160-MRA-DFM, 2024 U.S. Dist. LEXIS 243633, at *14 (C.D. Cal. Dec. 16, 2024) (similar, and holding "*Facebook Tracking* squarely controls here"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *5 (N.D. Cal. 2019) ("[T]he complaint adequately alleges that [defendant-website] violated section 631 by enabling [tracking software provider's] wrongdoing.").

Here, the Complaint alleges that communications to Defendant were intercepted by joint action between Defendants and Meta, in that (i) Defendants intentionally added the Pixel to its Website; and (ii) Meta designed the Pixel to intercept the contents of Plaintiff's communications to Defendants via Plaintiff's computer browser. *See* Compl. ¶¶ 86, 103-08, 129, 143. Plaintiff also alleges the Pixel code caused Plaintiff's browser to send the intercepted communications to Meta (facebook.com/tr/) as the page loads and events fire — not a mere after-the-fact disclosure (Compl. ¶¶ 125-27, 135-40, 143, 146-48) placing this case in line with *Facebook Tracking* as opposed to Defendant's reliance on *Cookie Placement*.

Defendants' cited authorities are inapposite in that they either do not involve similar tracking technology (*Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (telephone), *Powell v. Union Pac. R.R. Co.*, 864 F.Supp.2d 949, 955 (E.D. Cal. 2012) (telephone), *Pena v. GameStop, Inc.*, 670 F.Supp.3d 1112, 1118 (S.D. Cal. 2023) (chat feature), *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *10 (E.D. Cal. Mar. 30, 2023) (chat feature), and *Licea v. Old Navy, LLC*, 669 F.Supp.3d 941, 946 (C.D. Cal. 2023) (chat feature)), or are directly contradicted by later authorities. *See Gray v. Luxottica of Am., Inc.*, Case No. 8:24-cv-00160-MRA-DFM, 2024 U.S. Dist. LEXIS 243633, at *12 (C.D. Cal. Dec. 16, 2024) ("Defendant's reliance on *Graham*, however, is misplaced . . . . most district courts in the Ninth Circuit have rejected the argument that a service provider is categorically exempt from CIPA under the party exemption rule.").

Moreover, Defendants' argument that "[e]ven if Plaintiff's wiretapping claims were based on alleged interceptions by third parties under the theory that Gazebo aided and abetted those interceptions, they would still fail . . . because the Complaint does not plead facts showing the third parties 'intercepted' Plaintiff's communications" (MTD at 12) is meritless. The Complaint adequately pleads Plaintiff's theory that Gazebo aided and abetted the Tracking Entities unlawful interceptions, setting forth sufficient factual allegations to support this claim throughout the pleading. *See* Compl. ¶¶ 129, 202, 272-73.

### B. Plaintiff Did Not Consent to the Interception of His Sensitive Information

"Consent to an interception can be explicit or implied, but any consent must be actual." *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 U.S. Dist. LEXIS 172784, at *46-47 (N.D. Cal. Sept. 26, 2013). "[T]he circumstances, considered as a whole, [must] demonstrate that a reasonable person understood" and knowingly authorized the interception. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024); *see also United States v. Ortiz-Lopez*, 651 F.Supp.3d

855, 868 (W.D. Tex. 2023) (quoting *Berry v. Funk*, 146 F.3d 1003, 1011 (D.C. Cir. 1998)) ("Without actual notice, consent can only be implied when the surrounding circumstances convincingly show that the party knew about and consented to the interception."). Disclosures must "explicitly notify" users of the interception at issue to establish actual consent. *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1063 (N.D. Cal. 2021). This means that Gazebo's disclosures concerning what data it shares and with whom must be unambiguous to put users on notice of the practices at issue. *See, e.g., id.*; *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 847–48 (N.D. Cal. 2014). On a motion to dismiss, the burden of proof to show consent rests with the defendants. *Doe v. FullStory, Inc.*, 712 F.Supp.3d 1244, 1253 (N.D. Cal. 2024) (CIPA); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778, at *50 (N.D. Cal. Sept. 23, 2016) (Wiretap Act).[2]

Courts have consistently held that allegations of no express or implied consent are sufficient to survive a motion to dismiss. *See Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *5 (9th Cir. May 31, 2022) (finding that the plaintiff met his pleading burden where he alleged he did not give express prior consent)*; D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054, at *17 (S.D. Cal. Oct. 24, 2023) (same); *see also Esparza v. Kohl's, Inc.*, 723 F.Supp.3d 934, 941 (S.D. Cal. 2024) (same). Even Defendants' own authority supports this point. *See Licea*, 669 F.Supp.3d at 948 (rejecting defendant's argument that plaintiff consented to any alleged recording where plaintiff explicitly alleged that he did not consent to the recording of conversations with defendant.).

Here, Plaintiff alleges that he did not provide consent because the Website did not provide notice of or obtain consent as to third parties' interception of his

---

[2] Defendants' reliance on *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019), is misplaced. *Reyes* addressed the plaintiff's burden at the class certification stage, not the pleading standard applicable on a motion to dismiss under CIPA.

Sensitive Information. *See* Compl. ¶¶ 23, 27, 59, 150, 177, 180. This is sufficient at this stage of the proceedings. Defendants' selected portions of the Privacy Policy (MTD at 15-16) do not alter this outcome. The Policy relies on vague, passive language, stating that data *may* be collected, and calls into the question the efficacy of users' choice to opt-out of tracking as "even after opting out, [users] may still receive some cookies and internet-based ads from other companies." Courts do not impute to users "the skill of an experienced business lawyer or someone who is able to easily ferret through a labyrinth of legal jargon." *Calhoun*, 113 F.4th at 1151. Instead, the question is whether a reasonable person – measured against the general public's level of sophistication – would have understood the disclosures to convey the relevant practice. *Id.* Given the facts here, Plaintiff was not on notice of Defendants' practices and, therefore, consent cannot be presumed.

**C. Defendants Did Not Seek, Let Alone Provide, Consent to Meta's Interceptions.**

There are two exceptions to liability for interceptions under the ECPA: (1) where a party to a communication directly intercepts the communication (the "party exception"); and (2) where a party to a communication provides prior consent to a third party's interception of the communication (the "consent exception"). 18 U.S.C. § 2511(2)(c)-(d). Neither the party exception or consent exception are applicable where the communication is intercepted "for the purpose of committing any criminal or tortious act . . . ." 18 U.S.C. § 2511(2)(d).

Defendants argue that their status as parties to the communications at issue vitiates their liability. *See* MTD at 16-17. This misstates the operation of the party exception. Gazebo's mere status as a party to the conversation only exempts its conduct *where Gazebo is the direct interceptor*. The text of the Wiretap Act supports this finding: "It shall not be unlawful . . . for a person . . . to *intercept* a wire . . . communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d) (emphasis added); *see also Mekhail v. N. Mem'l Health Care*,

726 F.Supp.3d 916, 926 (D. Minn. 2024) ("[T]he statute's plain language appears to support the interpretation that the party exception was drafted with active interceptors foremost in mind."). As pled, Gazebo is a procurer or user – not an interceptor. *See id.* at 925 ("An interceptor and the procurer/user of an interception are conceptually and legally distinct."). Plaintiff alleges that Defendants installed the Pixel on its Website *to allow Meta* to intercept Plaintiff's Sensitive Information. *See* Compl. ¶¶ 129, 272-73. While Defendants benefitted from the intercepted information as part of their business operations and strategy, it was Meta that performed the actual interception. *See, e.g., id.* ¶¶ 57, 98, 129, 141, 147. Simply stated, because Defendants are not the intercepting parties, and Meta is not a party to the conversation, the party exception does not apply here.

Furthermore, there is nothing in the record before this Court to show that Defendants provided consent for Meta's interceptions. The burden to prove consent lies with the party asserting it as a defense. *Heerde v. Learfield Commc'ns, LLC*, 741 F.Supp.3d 849, 862 (C.D. Cal. 2024) (quoting *In re Pharmatrak Inc.*, 329 F.3d 9, 19 (1st Cir. 2003)). Defendants have failed to produce any evidence to support its claim that it provided effective consent to Meta's interceptions of Plaintiff's PII, nor could it. Assuming *arguendo* that Defendants gave implicit consent for Meta's interceptions by using the Pixel, Meta's Terms governing the Pixel explicitly prohibits the interception of Plaintiff's Sensitive Information. Meta did not offer Defendants carte blanche data interception services. To the contrary, Meta *conditions* the use of its Pixel on agreement to the Meta Business Tools Terms, which requires Pixel users, like Defendants, to explicitly limit the use of the Pixel. The Terms specifically prohibit the use of the Pixel to intercept sensitive or legally protected information. Compl. ¶¶ 151-59. Thus, any consent provided by Defendants would be constrained by its agreement to the Meta's Business Tools Terms, which explicitly forbids Gazebo's use of the Pixel to intercept Plaintiff's Sensitive Information. *See In re Pharmatrak*, 329 F.3d at 20–21 (holding consent

could not exist where use of a tracking tool to gather personally identifiable information was "explicitly conditioned . . . on the fact that it would *not* collect such information" because "[i]t would undercut efforts by one party to a contract to require that the privacy interests of those who electronically communicate with it be protected by the other party to the contract"); *see also Lynch v. Express Scripts Holding Company*, No. 23-CV-01170-AMO, 2025 U.S. Dist. LEXIS 150756, at *24 (N.D. Cal. Aug. 5, 2025) (holding that, based on Meta's policies, plaintiff could plausibly allege that it was "not disclos[ed] [to him] that [defendant] would engage" in the sharing of his sensitive information).

**D. The Crime-Tort Exception Applies, Precluding Defendants from Claiming Any Purported Defense Under the Party Exception.**

Irrespective of whether Gazebo was a party to the communications at issue and Gazebo consented to Meta's interceptions (which it did not), the crime-tort exception applies to enforce Defendants' liability under the Wiretap Act. The exceptions under § 2511(2)(d) do not apply where, as alleged here, the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

The crime-tort exception focuses on whether the purpose for the interception was criminal or tortious. *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999). The existence of a lawful purpose does not counteract an interception that was also made for a tortious or unlawful purpose. *Id.* Plaintiff alleges that Defendants used the Pixel to intercept Plaintiff's communications with Gazebo, resulting in violations of VPPA and an intrusion into Plaintiffs' seclusion. *See* Compl. ¶¶ 23, 57-58, 93, 129, 141, 147, 173, 260. Defendants acted with intent to install the Pixel onto their Website to allow Meta to intercept Plaintiff's communications and to share Plaintiff's Sensitive Information with third parties for, at a minimum, advertising purposes, in violation of the VPPA. *Id.* ¶¶ 7, 23, 58, 147.

The VPPA prohibits the disclosure of PII, but allows the disclosure of names, addresses, and subject matter of audio visual materials, so long as the disclosure "is for the exclusive use of marketing goods and services directly to the consumer" and the "disclosure does not identify the title [or] description . . . of any . . . audio visual material . . . ." 18 U.S.C. § 2710(b)(2)(D), 2710(b)(2)(D)(i)-(ii). In short, the use of the disclosed video titles to market directly to Plaintiff is prohibited under the VPPA, which is independent of the interception itself. This gives rise to the application of the crime-tort exception here. *See Kane v. Univ. of Rochester*, No. 23-cv-6027-FPG, 2024 U.S. Dist. LEXIS 48515, at *23 (W.D.N.Y. Mar. 19, 2024) (finding use of Pixel to disclose legally protected communications to Meta for marketing purposes invoked crime-tort exception); *Castillo v. Costco Wholesale Corporation*, No. 2:23-cv-01548, 2024 U.S. Dist. LEXIS 207197, at *19 (W.D. Wash. Nov. 14, 2024) (same); *R.C. v. Walgreen Co.*, 733 F.Supp.3d 876, 901–02 (C.D. Cal. 2024) (same).

Here, the basis for finding a criminal purpose is not Defendants' disclosure or Facebook's interception. The criminal purpose is underpinned through Defendants' business arrangement with Facebook, which reveals Defendants' intent to profit commercially from exploiting PII, in violation of the VPPA. *See, e.g., Cooper v. Mount Sinai Health Sys., Inc.*, 742 F.Supp.3d 369, 382 (S.D.N.Y. 2024) (finding defendant's "business arrangement with Facebook" to exploit legally protected information sufficed to infer criminal intent); *Kane*, 2024 U.S. Dist. LEXIS 48515, at *23 (finding the use of legally protected information for marketing purposes "was sufficient to invoke the crime-tort exception"); *Castillo*, 2024 U.S. Dist. LEXIS 207197, at *20 ("[T]here is no bright-line rule insulating financial motives from the crime-tort exception."); *Walgreen*, 733 F.Supp.3d at 901 ("[E]ven where a defendant is arguably motivated by financial gain, the crime-tort exception may nonetheless apply . . . ."). Defendants cannot evade liability under the Wiretap Act. *See Kane*, 2024 U.S. Dist. LEXIS 48515, at *23 (denying motion

to dismiss Wiretap Act claim under tort-crime exception where defendant used Pixel to make money); *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 U.S. Dist. LEXIS 31273, at *16-17 (N.D. Ill. Feb. 21, 2025) (same); *R.S. v. Prime Healthcare Servs.*, No. 5:25-cv-00330-ODW (SPx), 2025 U.S. Dist. LEXIS 6338, at *21 (C.D. Cal. Jan. 13, 2025) (same).

## IV. PLAINTIFF STATES A CLAIM FOR INTRUSION UPON SECLUSION.

Defendants violated Plaintiff's privacy through its placement of the Tracking Tools on their Website, which allowed the Tracking Entities to covertly track and share Subscribers' activity, including their personal or sensitive searches. By implementing the Tracking Tools on the Website, Defendants placed the Tracking Tools on Plaintiff's computer, which compelled Plaintiff's browser to automatically share Plaintiff's Sensitive Information with the Tracking Entities.

To establish intrusion upon seclusion in California, a plaintiff must allege "(1) an intentional intrusion, physical or otherwise, 'upon the solitude or seclusion of another,' (2) in a manner 'highly offensive to a reasonable person.'" *Vizio*, 238 F.Supp.3d 1204, 1231 (C.D. Cal. 2017). Defendants intruded upon Plaintiff's seclusion by (1) intercepting Plaintiff's activity on the Website, (2) revealing Plaintiff's video watching activity, (3) combining that video information with cookies on Plaintiff's devices (which were not given voluntarily to Defendants), and (5) routing that combined Sensitive Information to Meta – all at once. As the Sensitive Information at issue is protected under the VPPA, Plaintiff had a reasonable expectation that a VTSP would keep Sensitive Information confidential. Exposing Plaintiff's Sensitive Information to Meta resulted directly from Defendants' addition of the Pixel to the Website. This amounts to more than "initial request for webpage data and similar transfers of signals necessary for basic internet traffic" (*see* MTD at 17 (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). Defendants cite *Saleh v. Nike, Inc.*, but there, the court found no

expectation of privacy where plaintiff did not allege that defendants collected any sensitive personally identifiable information. 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021). Here, Plaintiff alleges that Defendants' collection of Subscribers' various cookies containing their UIDs allowed the breadth of information collected on them to be tied directly to the identifying information in their Facebook profiles. Compl. ¶¶ 110-14, 120-24, 138.

Defendants claim that Plaintiff provided the information at issue to Gazebo "directly and intentionally." MTD at 17. This does not immunize Defendants. Plaintiff alleges that Defendants *enabled* third parties, such as Facebook and Google, to intentionally intrude into his internet communications. Compl. ¶¶ 129, 260. While Plaintiff could have provided their personal information to Defendants "for the sake of [obtaining video services], they did not disclose it for sale to Google and Facebook." *Doe v. Redeemer Health*, No. 230501236, 2023 Phila. Ct. Com. Pl. LEXIS 17, at *1 fn. 2 (Phila. Ct. Com. Pl. Sept. 16, 2024) (holding the voluntary provision of information to defendant did not immunize it from invasion of privacy claims); *see Doe v. Call-On DOC, Inc.*, No. 24cv2095-GPC(KSC), 2025 U.S. Dist. LEXIS 113269, at *48-49 (S.D. Cal. June 13, 2025) (finding plaintiff plausibly alleged an intrusion upon seclusion claim where defendant intentionally disclosed her sensitive information with third parties through defendant's placement of tracking tools on its website); *M. H. v. Done Glob. Inc.*, No. 24-cv-03040-RFL, 2025 U.S. Dist. LEXIS 38456, at *5-7 (N.D. Cal. Feb. 26, 2025) (same). Thus, Plaintiff's willing provision of information to Defendants does not determine the outcome of Plaintiff's intrusion upon seclusion claim.

Sustaining an intrusion upon seclusion claim turns on whether a defendant's intrusion was highly offensive, considering "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Med. Lab. Mgmt. Consultants v. ABC, Inc.*, 306

F.3d 806, 819 (9th Cir. 2002). "While analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion, the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Facebook Tracking*, 956 F.3d at 606. Here, Defendants are entities with elevated privacy obligations under the VPPA, the information alleged to be intruded upon was Plaintiff's protected PII and Defendants did not sufficiently warn Plaintiff that his VPPA-protected PII would be disclosed and intercepted by the Tracking Entities, or obtain his consent for the same.

Congress has spoken as to the offensive nature of sharing PII, noting that in an age of computers, "it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of . . . programs they watch . . . [which] is wrong." Compl. ¶ 32. Such "a window into our loves, likes, and dislikes," (Compl. ¶ 34) could live online forever because Defendants "found a way to monetize [PII] on the open-market . . . ." *See Redeemer Health*, 2024 Phila. Ct. Com. Pl. LEXIS 17, at *1 fn. 2 (overruling intrusion upon seclusion demurrer). Plaintiff established that the information at issue here involved VPPA-protected PII and third parties intercepting that PII for marketing purposes through the Pixel. The interception of PII was an intrusion that was highly offensive. *See Facebook Tracking*, 956 F.3d at 604 n. 7 (noting "individuals maintain the expectation that entities [like Facebook] will not be able to collect such broad swaths of personal information absent consent").

"Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (internal quotations omitted)); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1080 (N.D. Cal. 2016) ("A judge should be cautious before substituting his or her own judgment for that of the community.").

## V. PLAINTIFF STATES A TRAP AND TRACE CLAIM.

California prohibits "any person from 'install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order.'" *Gabrielli v. Haleon US Inc.*, 2025 U.S. Dist. LEXIS 169503, at *31 (N.D. Cal. Aug. 29, 2025) (quoting Cal. Penal Code § 638.51(a)). Plaintiff alleges that Defendants' use of the Tracking Tools resulted in violations of Cal. Penal Code § 638.51(a).

Defendants contend that Plaintiff has failed to properly allege a trap and trace Claim under Cal. Penal Code § 638.51(a) on several grounds. *First*, Defendants claim that Plaintiffs failed to allege what addressing information was shared, and if any was identified, that such information would identify the source of the communication. MTD at 19. *Second*, Defendants believe that because the contents of the communications were alleged to have been disclosed, any software used to make disclosures by Defendants cannot be trap and trace devices. *Id.* at 20. *Third*, Defendants believe that trap and trace devices only capture incoming signals to a target device. *Id.* at 21.[3] Courts have consistently held that the types of Tracking Tools alleged in the Complaint are trap and trace devices under Cal. Penal Code § 638.51(a). *See Garon v. Keleops USA, Inc.*, No. 25-cv-02124-DMR, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sept. 2, 2025); *Gabrielli*, 2025 U.S. Dist. LEXIS 169503; *Deivaprakash v. Condé Nast Digit.,* No. 25-cv-04021-RFL, 2025 U.S. Dist. LEXIS 172906 (N.D. Cal. Sept. 4, 2025); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024); *In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557-PCP,

---

[3] Defendants attach several demurrers to its Motion. Judicial notice is not without its boundaries. At most, the Court may notice existence, not truth or legal effect. *See Gonzalez v. Santa Clara Cnty.*, No. 24-cv-00296-PCP, 2025 U.S. Dist. LEXIS 158393, at *14-15 (N.D. Cal. May 28, 2025) (taking judicial notice of an order sustaining a demurrer "without taking judicial notice of the underlying truth of any factual assertions therein"); *Clement 1 LLC v. Scottsdale Ins. Co.*, CV 23-3779 PA (JCx), 2023 U.S. Dist. LEXIS 119914, at *6 (C.D. Cal. July 11, 2023) (granting request for judicial notice of an order sustaining a demurrer but declining to take judicial notice of "any disputed facts therein").

2025 U.S. Dist. LEXIS 152615 (N.D. Cal. Aug. 6, 2025); *Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519, at *30 (S.D. Cal. Feb. 12, 2025).

### A. The Tracking Tools Capture Addressing Information that Identifies the Source of the Electronic Communication Through the User's Facebook ID.

Cal. Penal Code § 638.51(a) defines a trap and trace device as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Defendants argue that the Complaint fails to plead the existence of any device that transmits addressing information that identifies the source of the electronic communication. Plaintiff alleges that the Tracking Tools identify users, including Plaintiff, and sufficiently pleads that the Tracking Tools transmit identifiable addressing information. Compl. ¶¶ 120-24. Both Meta's[4] and Google's[5] Tracking Tools admit to collecting and using IP addresses as a standard part of their data collection, where IP addresses can be used for purposes of identifying a user and/or geolocating a user's physical location.

---

[4] *See Meta Pixel*, META, https://developers.facebook.com/docs/meta-pixel/ (last visited Sept. 16, 2025) ("The Meta Pixel can collect . . . data like IP addresses, information about the web browser, page location, document, referrer and person using the website"); *Customer Information Parameters*, META, https://developers.facebook.com/docs/marketing-api/conversions-api/parameters/customer-information-parameters/ (last visited Sept. 16, 2025) (noting "IP address of the browser corresponding to the event . . . is automatically added to events sent through the browser . . . .").

[5] *See IP address*, GOOGLE, https://support.google.com/google-ads/answer/6322?hl=en#:~:text=A%20unique%20number%20that's%20assigned,to%20a%20particular%20IP%20address (last visited Sept. 16, 2025) (noting Google uses IP addresses "to identify the location from which a computer is connecting to the Internet" to help Google "know which customers seem to be using a computer in your targeted region").

While Plaintiff contends that Defendants' introduction of evidence outside of the Complaint is inappropriate, to the extent it is considered by this Court, Plaintiff highlights that Defendants claim to have geolocated Plaintiff. *See* Sullivan Decl., ¶ 6 ("[T]he Account's access to the website was geolocated to . . . California"). This does not account for any issues of accuracy in the geolocation process itself.[6]

Defendants also acknowledge that "[m]aybe a Facebook ID/UID could" qualify as identifying addressing information." MTD at 19-20. In response to this acknowledgement, they argue that Plaintiff has failed to allege that Defendants received their Facebook UID, or, in the alternative, that Facebook installed the cookies that transmitted the Facebook UID, not the Defendants. This disregards Plaintiff's allegations, including that Plaintiff's Facebook UID was captured and transmitted by the Pixel that was implemented by the Defendants on the Website. Compl. ¶ 27. Defendants' focus on the source of the cookies, or the exact recipient of the Facebook UID, is irrelevant. Cal. Penal Code § 638.51 prohibits the installation of a trap and trace device. The statute makes no distinction based on the source of that device, or the destination of the information received. Defendants cite no source for this distinction based on the recipient of the information, and no such distinction exists anywhere in the statute. Defendants appear to have unilaterally created a requirement that Defendants must have developed the Pixel or received the transmitted information for the Pixel to be deemed a trap and trace device.

---

[6] "IP-based geolocation services can only provide an approximate measure of geolocation accuracy . . . [a]nd they provide 50 percent to 75 percent accuracy for a user's city." *Everything You Need to Know About IP Based Geolocation*, IFSO, https://www.if-so.com/geo-targeting/#:~:text=IP%2Dbased%20geolocation%20services%20can,IP%20addresses%20to%20physical%20locations (last visited Sept. 16, 2025).

### B. The Tracking Tools are Trap and Trace Devices Because They Identify the Source of the Information Transmitted, Regardless of Other Data Transmitted.

Defendants argue that because the Tracking Tools also capture the contents of the transmission, in addition to the source of the transmission, they cannot be trap and trace devices. This is a misreading of Cal. Penal Code § 638.51(a) – one that courts have already rejected.[7] The court in *Tax Filing* concluded that the plain language and legislative intent of Cal. Penal Code § 638.51(a) lead to the conclusion that devices which *only* capture contents of communications are not trap and trace devices. 2025 U.S. Dist. LEXIS 152615, at *14-15. In the *Tax Filing* court's view, devices that capture *both* the source and the contents of a communication are still trap and trace devices. *Id.* at *19. The court noted that, even if the language was ambiguous, "[g]iven CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications." *Id.* at *16. According to Defendants' reading of the statute, "an entity could escape liability under CIPA's pen register provisions by combining the functionality of a wiretap with that of a pen register." *Id.*; *see Zarif*, 2025 U.S. Dist. LEXIS 26519, at *30-31; *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

### C. The Tracking Tools on Defendant's Website are Considered Trap and Trace Devices.

Defendants argue that the Tracking Tools only track incoming communications, not outgoing communications. They support this argument by citing, and requesting judicial notice of, several sustained demurrers. What Defendants fail to disclose is that these cases are substantially different than the case at hand, wherein plaintiffs claimed that the defendant tracked their IP address

---

[7] Defendants appear to read the last clause of Cal. Penal Code § 638.51(a) as excluding devices that do capture the contents of a communication.

and no other information, and/or no third parties were identified. *See Rodriguez v. Sparc Group LLC*, Case No. 24STCV26946 (Cal. Super. Ct. L.A. Cnty. July 9, 2025) ("As far as the court can tell, the IP address is the only information the [w]ebsite allegedly collects."); *Garcia v. Diversified Foodservice Supply, LLC*, No. 24STCV19784 (Cal. Super. Ct. L.A. Cnty. June 24, 2025) ("Section 638.51 imposes no liability for a website's collection of data . . . ."); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 Cal. Super. LEXIS 66498, at *11 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024) (raising concern about "the requirement of a third party to actually commit a volitional act for purposes of liability" because plaintiff did not allege defendant as a third party). These cases imply that the *websites* are being accused of collecting the IP addresses, not third-party tracking entities. As discussed, Plaintiff alleges that his data is being sent directly from users' browsers to Meta and Google, not merely being harvested at Defendants' servers and *then* being shared to Meta and Google.[8] *See* Section III(A), (C).

In addition, federal courts have already rejected these state cases. *Garon*, 2025 U.S. Dist. LEXIS 152615, at *31 (declining to follow *Licea, Sanchez*, and *Aviles* because "Licea and Sanchez reached their conclusions based on an analysis of CIPA's legislative history" and finding cases allowing similar trap and trace claims to survive "based on the plain statutory language" more persuasive). Defendants' cited state cases are at odds with how federal courts have read Cal. Penal Code § 638.51(a), and are not dispositive of the case at hand.

---

[8] The other two demurrers relied on by Defendants failed to even consider Defendants' argument and were sustained because the plaintiffs had not pled their claim with sufficient particularity. *See Casillas v. Transitions Optical, Inc.,* No. 23STCV30742 at *4 (Cal. Sup. Ct. L.A. Cnty. Apr. 23, 2024) ("Generally, the [c]omplaint makes inappropriate and conclusory legal arguments, but alleges few ultimate facts. It does not contain a 'statement of the facts constituting the cause of action in ordinary and concise language.'"); *Garcia v. Asana, Inc.*, No. 30-2023-01332991-CU- CR-CJC, at *3 (Cal. Super. Ct. Orange Cnty. Aug. 15, 2024) ("Plaintiff did not allege sufficient facts with the required particularity to state this statutory violation.").

Plaintiff clarifies that the Tracking Tools capture both outgoing and incoming communications. This is how the internet functions; a user's browser communicates with a website, and the website responds to that communication. Each page interaction involves both a request and a response; the Pixel records data in both directions. Every single time a user's interactions with a website are tracked, the technological reality of the internet requires both outgoing and incoming communications. *See generally* Compl. ¶ 137 fn. 75.

The Pixel tracked Plaintiff's interactions with the Website, including his search results, video views, and purchases. Compl. ¶ 125 (noting a variety of Pixel Events send data to Meta). Importantly, each Pixel Event is triggered by a different event: where the SubscribedButtonClick and InitiateCheckout Events are triggered by sending data to Defendants, the PageView Event is triggered by receiving and loading data from Defendants. *Id*. (noting the PageView event sends data to Meta when "a user load[s] a page with a Pixel installed"). For this reason, courts have consistently found that Tracking Tools, such as those in the case at hand, are pen registers and trap and trace devices under Cal. Penal Code § 638.51. *See Garon*, 2025 U.S. Dist. LEXIS 170745; *Gabrielli*, 2025 U.S. Dist. LEXIS 169503; *Deivaprakash*, 2025 U.S. Dist. LEXIS 172906; *Shah*, 754 F. Supp. 3d 924; *Tax Filing*, 2025 U.S. Dist. LEXIS 152615. As discussed in Section III(B), Plaintiff did not consent to these practices.

## VI. PLAINTIFF STATES A CLAIM UNDER THE VPPA.

The VPPA prohibits a "video tape service provider" from knowingly disclosing, to any person, "personally identifiable information" ("PII") concerning any "consumer" of such provider. 18 U.S.C. § 2710(b). The VPPA defines "PII" to include information that "identifies a person as having requested or obtained specific video materials or services." *Id.* § 2710(a)(3).

Here, Plaintiff adequately alleges all three essential elements of a VPPA claim: (1) Defendants are "video tape service providers" because they provide pre-

recorded audio-visual content on their Website (Compl. ¶ 49) (2) Plaintiff is a "consumer" under the statute because he used the Website to access video content (*Id.* ¶ 27); and (3) Defendants knowingly disclosed Plaintiff's PII – the titles of videos obtained linked to his UID – without consent (*Id.* ¶¶ 51, 124, 224, 231).

Defendants' sole argument in support of dismissal of Plaintiff's VPPA claim is that Plaintiff's UID does not constitute PII under the statute. *See* MTD at 22-24. To support this position, Defendants rely primarily on recent Second Circuit decisions in *Solomon v. Flipps Media, Inc.,* 136 F.4th 41 (2d Cir. 2025) ("*Solomon*") and *Hughes v. Nat'l Football League,* No. 24-2656, 2025 U.S. App. LEXIS 15216, (2d Cir. June 20, 2025) ("*Hughes*"). *Id.* This argument has been addressed and rejected on multiple occasions by courts in the Ninth Circuit.

Indeed, courts in the Ninth Circuit, pre-*Solomon* and post-*Solomon* have consistently held that an UID constitutes PII under the VPPA, even under the "ordinary person" standard adopted in *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017).[9] *See Plotsker v. Envato Pty Ltd.*, No. 2:24-CV-04412-MEMF-RAO, 2025 U.S. Dist. LEXIS 168070, at *14 (C.D. Cal. Aug. 26, 2025) (post-*Solomon,* holding "it is reasonable to infer from the allegations [that the pixel disclosed plaintiffs' unencrypted UIDs] that an ordinary person will identify [p]laintiffs' names with the allegedly disclosed unencrypted information);[10] *Garcia*

---

[9] *Solomon* and *Hughes* departed from the "ordinary person" standard adopted by the Ninth Circuit in *Eichenberger*, 876 F.3d at 985-86. More importantly, *Eichenberger* did not address whether a Facebook ID qualifies as PII. Rather, the court considered whether a Roku device identifier — which identifies a device, not a specific individual — constituted PII.

[10] The *Plotsker* defendants filed *Solomon* and *Hughes* as supplemental authorities in support of their motion to dismiss. *Plotsker*, 2025 U.S. Dist. LEXIS 168070, at *6 n. 2. In denying the motion to dismiss, the court declined to adopt *Solomon*, noting that "[t]his Circuit . . . has made clear that 'modern technology may indeed alter—or may already have altered—what qualifies under the [VPPA]. A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual.'" *Id.* at *20 n. 7 (citing *Eichenberger*, 876 F.3d at 986).

*v. Bandai Namco Ent. Am. Inc.,* No. 8:25-CV-00967-DOC-PVC, 2025 U.S. Dist. LEXIS 152616, at *22-23 (C.D. Cal. Aug. 7, 2025) (post-*Solomon,* similar);[11] *Archer v. NBCUniversal Media, LLC*, No. 2:24-CV-10744-AB-JC, 2025 U.S. Dist. LEXIS 129598, at *14-15 (C.D. Cal. July 2, 2025) (post-*Solomon,* similar); *Ade v. Viki, Inc.*, No. 23-CV-02161-RFL, 2024 U.S. Dist. LEXIS 79467, at *5-6 (N.D. Cal. Mar. 28, 2024) (pre-*Solomon*, holding that "plaintiffs' FIDs are PII under the Ninth Circuit's 'ordinary person' standard").

Moreover, the *Hughes* and *Solomon* decisions are not binding on this Court. *See Garcia,* 2025 U.S. Dist. LEXIS 152616, at *22 ("The Court is not bound to follow the Second Circuit's application of the ordinary person standard."); *see also Haines v. Cengage Learning, Inc.*, No. 1:24-cv-710, 2025 U.S. Dist. LEXIS 139847, at *11 (S.D. Ohio July 22, 2025) (dismissing defendant's reliance on *Hughes* because it is a non-precedential summary order that stands in "stark contrast" to the overwhelming weight of authority holding that a UID qualifies as PII under the VPPA); *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12-CV-2472-AJB-KSC, 2016 U.S. Dist. LEXIS 101235, at *11 (S.D. Cal. Aug. 1, 2016) (holding a decision by the Second Circuit Court of Appeals is not binding on this Court).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss should be denied. Should the Court grant the Motion in any part, Plaintiff respectfully requests leave to amend.

---

[11] Addressing *Solomon* directly, the *Garcia* court stated: "While the Ninth Circuit has not yet squarely addressed this issue, numerous district courts in the Ninth Circuit . . . have found the [Facebook] Pixel discloses PII at the pleading stage . . . ." *Garcia*, 2025 U.S. Dist. LEXIS 152616, at *22.

Dated: September 26, 2025

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*

Adam M. Apton (SBN 316506)
515 South Flowers Street
18th & 19th Floors
Los Angeles, CA 90071
Telephone: (213) 985-7290
Facsimile: (212) 363-7171
Email: aapton@zlk.com

Mark S. Reich*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com

**pro hac vice* forthcoming

*Counsel for Plaintiff*